UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO. 5:12-CV-00125-JHM-LLK

PRINCIPAL LIFE INSURANCE COMPANY                                    PLAINTIFF

V.

DOCTORS VISION CENTER I, PLLC
and KENNETH B. GROGAN                                               DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss of Defendant Doctors Vision Center I, PLLC [DN 19]. Fully briefed, this matter is ripe for decision. For the following reasons, the motion is **DENIED**.

### I. BACKGROUND

This case arises from the denial of Dr. Kenneth Grogan's claim for disability insurance benefits under a policy issued by Principal Life. On December 12, 2009, Dr. Grogan, an owner and employee of Doctors Vision Center ("DVC"), submitted an application for the subject policy. The policy was to be owned by DVC. Under the policy's terms, Principal Life was to pay benefits to DVC if Dr. Grogan became disabled. The policy was subject to various conditions, exclusions, and definitions.

On December 7, 2011, Dr. Grogan submitted a claim for disability benefits to Principal Life. Principal Life denied this claim in a March 1, 2012 letter, stating in pertinent part that "Dr. Grogan is not Disabled under the terms of the policy" since "he is claiming Disability for a medical condition that is specifically excluded by the policy." (Mar. 1, 2012 Letter [DN 19-5] 3.) In the letter, Principal Life also stated that it had "yet to make a determination regarding the validity of the policy" and that it was "reviewing Dr. Grogan's claim to determine if there were misrepresentations

or omissions in the application" that might affect his eligibility for coverage. (Id. at 1.)

Thereafter, DVC sought an additional explanation for the denial of the claim. In an April 9, 2012 letter, Principal Life reiterated the basis for the denial. Additionally, Principal Life explained:

> Dr. Grogan has additional coverage in force with Northwest Mutual. We were informed, in writing, that Dr. Grogan had a prior claim . . . with them . . . which was paid for the period of May 25, 2010 to January 25, 2011. Upon further inquiry we were informed that the claim started February 24, 2010 and benefits began after the completion of the 91 day Elimination Period. This shows that Dr. Grogan had an active claim of disability with Northwest Mutual on March 25, 2010, which is the date he signed Part D and the Amendment and Acceptance form of the policy.

(Apr. 9, 2012 Letter [DN 19-5] 9.) DVC then requested an appeal of the denial. Initially, Principal Life promised a response within thirty days. It then asked for an extension through August 24, 2012.

After receiving the extension, Principal Life affirmed its denial on August 24, 2012, advising DVC that it "would not have issued the policy on Grogan if it had known . . . that [he] was disabled and not actively working when he and DVC signed and submitted the Disability Insurance Application Part D . . . on or about March 25, 2010." (Aug. 24, 2012 Letter [DN 19-5] 4.) Principal Life also advised DVC of its decision to file a civil action for the rescission of the subject policy and, alternatively, for a declination of Dr. Grogan's claim for benefits. (Id. at 5.) Principal Life filed a complaint in this Court that same day, on August 24, 2012, seeking rescission of the policy and/or a judicial declaration that the policy is void *ab initio*.

More than three months later, on November 30, 2012, Dr. Grogan filed suit in the McCracken Circuit Court against DVC and its two other members. This complaint asserts claims relating to DVC's internal affairs.[1] In its counterclaims, DVC seeks, among other things, to hold Dr.

---

[1] Specifically, Dr. Grogan asserts that DVC and its members: (1) failed to perform its obligations and duties under an Operating Agreement and Buyout Agreement, resulting in a breach of contract; (2) breached their fiduciary duties to Dr. Grogan; (3) converted Dr. Grogan's interest in the company; and (4) interfered with Dr. Grogan's business relationships. (Compl. [DN 19-2] ¶¶ 34–56.)

Grogan liable to it "if it is proven . . . that Grogan made fraudulent or material misrepresentations in connection with his application for the Key Person Replacement Insurance Coverage . . . ." (Answer & Countercls. [DN 19-3] ¶ 21.) Later, on December 11, 2012, DVC filed an action in the McCracken Circuit Court against its insurance agency and agent, which were affiliated with Principal Life. In this complaint, DVC asserts claims related to their roles in procuring the Principal Life policy. (Compl. [DN 19-4].) DVC then filed this motion to dismiss, asking the Court to decline to exercise jurisdiction over this declaratory judgment action.

## II. DISCUSSION

As an initial matter, the Court must determine the extent to which it has discretion whether to exercise jurisdiction over the claims made in this case. DVC considers the claims here to be solely for declaratory relief. The federal Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added). By its terms, then, the exercise of jurisdiction under the Declaratory Judgment Act is not mandatory. Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 812 (6th Cir. 2004) (citing Brillhart, 316 U.S. at 494); Travelers Indem. Co. v. Bowling Green Prof'l Assocs., 495 F.3d 266, 271 (6th Cir. 2007). "In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n, 481 F.3d 414, 422 (6th Cir. 2007). Abstention cases involving proceedings in state court are often referred to as involving the Wilton/Brillhart doctrine, named after the two primary

Supreme Court cases on the subject. Wilton, 515 U.S. at 289–90 (holding that a court acted within its bounds in staying a declaratory judgment action where parallel state proceedings were underway); Brillhart, 316 U.S. at 494–95 (setting a standard for discretion when state proceedings are pending).

Principal Life, on the other hand, insists that the Court has no discretion under the Wilton/Brillhart doctrine because the claims here are not solely for declaratory relief, but instead, include a claim for rescission. If the Court is to consider abstention, Principal Life asks it to apply the more stringent standard in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). In Colorado River, the Supreme Court held that district courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" unless there is "parallel" litigation pending in state court and the proposed litigation in federal court would be duplicative or unwise. 424 U.S. at 817–18; see Bates v. Van Buren Tp., 122 Fed. App'x 803, 806 (6th Cir. 2004); Gottfried v. Med. Planning Servs., Inc., 142 F.3d 326, 329 (6th Cir. 1998). The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction . . . ." Colo. River, 424 U.S. at 817.

In Count I of its complaint, entitled "Rescission and/or Declaration of Rights," Principal Life asserts that it "is entitled to rescind the policy and/or to a judicial declaration and/or judgment that the policy is void *ab initio*." (Compl. [DN 1] ¶ 25.) DVC asserts that reported Kentucky decisions treat rescission claims as declaratory judgment actions. See, e.g., Progressive N. Ins. Co. v. Corder, 15 S.W.3d 381, 382 (Ky. 2000) (noting that an insurance company "filed a declaratory judgment action . . . seeking a declaration that [the insured's] motorcycle insurance policy 'is rescinded and null and void *ab initio*'"); Nat'l Ins. Ass'n v. Peach, 926 S.W.2d 859, 860 (Ky. App. 1996) (noting

4

that an insurance company brought an "action for a declaration of rights," contending "that the policy was void from its inception").

Principal Life, by contrast, argues that an action for rescission is not an action for declaratory relief and should not be treated as one. See Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) ("Indeed, when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief."). According to Principal Life, because it seeks both a declaratory judgment and rescission, the Court should proceed with a non-declaratory judgment abstention analysis. See Harding v. Apartment Inv. & Mgmt. Co., 2011 WL 211528, at *3 (W.D. Ky. Jan. 20, 2011) (noting that when the "declaratory relief is intertwined with at least some of [the plaintiff's] other claims," district courts should apply the Colorado River factors for all of the plaintiff's claims).

The Sixth Circuit has never spoken directly on the issue of which standard applies when a plaintiff seeks both a rescission and declaratory relief. The Circuits take different approaches on this issue. There are arguably three lines of precedent. One approach, taken by the Ninth Circuit, is to apply the Colorado River standard when the coercive claims can exist independently of requests for declaratory relief. See United Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1112 (9th Cir. 2001). A second approach, taken by the Fifth Circuit, is to find that the Wilton/Brillhart discretionary standard is per se supplanted by Colorado River when an action includes both declaratory and non-frivolous coercive claims. See Kelly Inv., Inc. v. Cont'l Common Corp., 315 F.3d 494, 497 n.4 (5th Cir. 2002). A third approach, taken by courts in the Third, Seventh, and Eleventh Circuits "look[] to the 'heart of the action' to determine if the standard of Wilton or that

5

of Colorado River should apply." See ITT Indus., Inc. v. Pac. Emp'rs Ins. Co., 427 F. Supp. 2d 552, 556 (E.D. Pa. 2006).

After studying these precedents, this Court finds that the "heart of the action" test is the most appropriate and the most readily reconcilable with applicable legal principles. As Judge Steele noted in Lexington Ins. Co. v. Rolison:

> In Wilton, the unanimous Supreme Court explained that declaratory judgment actions are fundamentally different than ordinary civil actions because of the discretion imbued in district courts by Congress in deciding whether and when to avail themselves of this "remedial arrow in the district court's quiver." Thus, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." To eradicate that discretion simply because a coercive claim has been tacked onto what is, at its core, a declaratory judgment action would be to jettison those same considerations of practicality and wise judicial administration, to exalt form over substance, to marginalize Wilton, and to undermine the statutory scheme established by Congress.

434 F. Supp. 2d 1228, 1237 (S.D. Ala. 2006) (internal citations omitted). Indeed, in the Court's opinion, the "heart of the action" rule is preferable. The rule promotes flexibility, allowing district courts to treat different cases differently based on their fundamental character.

In the present case, the Court concludes that the "heart of the action" is declaratory in nature. Plaintiff's rescission claim is closely intertwined with the declaratory judgment claim, with both claims hinging on the proper interpretation of the subject insurance policy. Accordingly, the Court concludes that the discretionary standard of Wilton and Brillhart applies.[2]

---

[2] The Court recognizes that in Harding v. Apartment Inv. & Mgmt. Co., Judge Heyburn noted that the Sixth Circuit has previously "turned to a non-declaratory judgment abstention analysis in a case with declaratory and other claims when '[t]he claims . . . for which declaratory relief [was] requested and those for which injunctive relief [was] requested are so closely intertwined that judicial economy counsels against dismissing the claims for declaratory relief while adjudicating the claims for injunctive relief." 2011 WL 211528, at *3 (W.D. Ky. Jan. 20, 2011) (quoting Adrian Energy Assocs., 481 F.3d at 422). However, the Court finds that in Adrian Energy Assocs., the Sixth Circuit

The Sixth Circuit has instructed district courts to examine five factors to determine whether abstention is appropriate under Wilton and Brillhart. Bituminous, 373 F.3d at 813. These factors are:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

Id. (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000) (citations omitted)).

**Factors 1 and 2: Settlement of Controversy and Clarification of Legal Relations**

In the context of lawsuits by insurance companies to determine policy coverage obligations, most courts consider the first and the second factors together. See Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 557 (6th Cir. 2008) (noting that "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue"). However, as the parties have discovered, there is a split within the Sixth Circuit regarding each factor. One line of cases suggests that the declaratory judgment action must settle the entire controversy that is ongoing in state court and clarify the legal relationship between all the parties. See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., 495 F.3d 266, 271 (6th Cir. 2007) (holding that the failure to resolve the controversy or clarify the legal relationship between all the parties in the underlying state case weighed against exercising jurisdiction). Another line of cases suggests that the declaratory judgment need only settle the controversy and clarify the relations between those involved in the declaratory judgment action. See Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454

---

did not directly address the issue presented in this case.

7

(6th Cir. 2003) (holding that the first factor weighed in favor of accepting jurisdiction because the declaratory judgment would settle the insurance coverage issue between the parties).

The Sixth Circuit recognized this apparent conflict in Flowers, noting that "[t]he difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." 513 F.3d at 555. The Court then went on to present an alternative explanation, stating that "the contrary results in these cases might also be explained by their different factual scenarios." Id. Specifically, where the Sixth Circuit required the declaratory action to resolve the entire controversy and clarify the legal relations between all parties, there were factual disputes regarding the insured that would have to be resolved in the declaratory judgment action. See, e.g., Bituminous Cas. Corp., 373 F.3d at 813 (recognizing a dispute as to whether the injured party was the insured's employee). In each of the cases where the Sixth Circuit reached the opposite conclusion, such factual disputes did not exist. See, e.g., Northland Ins. Co., 327 F.3d at 454.

Some federal courts are not persuaded by these Flowers explanations, finding that the Sixth Circuit has essentially adopted contrary, irreconcilable positions. See, e.g., Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am., 565 F. Supp. 2d 779, 787 (E.D. Ky. 2008). The Court shares many of these courts' concerns. However, there are factual distinctions between the lines of cases that post-Flowers courts have found important. See, e.g., Auto Owners Ins. Co. v. Aldridge, 2009 WL 4782115 at *2–3 (E.D. Ky. Dec. 7, 2009). Therefore, this Court joins those cases in concluding that where the district court in the declaratory judgment action will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action, the declaratory action need only settle the controversy and clarify the legal relations between the parties

8

in the district court.

Here, there are three actions at issue, each of which asserts distinct claims and seeks distinct remedies. First, in the federal action, Principal Life seeks a rescission of the subject insurance policy or, alternatively, a declaration that Dr. Grogan's claim for benefits is not covered under that policy. Second, in Dr. Grogan's state action, the focus is on whether DVC breached its Operating or Buyout Agreements, and whether DVC's members breached their fiduciary duties to Dr. Grogan, converted his interest in the company, or interfered with his business relationships. Third, DVC's state action centers on whether its insurance agency and agent were negligent or fraudulent in selling the subject policy. A close analysis of DVC's action reveals that it focuses on whether it can shift liability to the insurance agency and agent should it be found liable to Principal Life. Notably, neither the validity of the subject policy nor its application to Dr. Grogan is at issue in either state action.[3]

DVC argues that if it were to exercise jurisdiction in this case, the Court would be required to engage in fact-finding that would affect the underlying actions. As an example, DVC argues that the Court would have to engage in fact-finding to determine whether the insurance agency and agent who sold the subject policy to DVC were negligent or fraudulent, which is at issue in DVC's state action. As another example, DVC argues that the Court might be required to engage in fact-finding as to whether Dr. Grogan is "disabled" under the policy, which would impact the determination of

---

[3] With respect to Dr. Grogan's action, the Court notes that in its counterclaims, DVC seeks to hold Dr. Grogan liable to it "if it is proven . . . that Grogan made fraudulent or material misrepresentations in connection with his application for the Key Person Replacement Insurance Coverage . . . ." (Answer & Countercls. [DN 19-3] ¶ 21.) However, this seems to suggest that the validity and application of the insurance policy to Dr. Grogan will be decided in the federal action. With respect to DVC's action, DVC asserts that its damages include the policy's rescission; however, DVC does not seek any determination that the policy was actually rescinded. (Compl. [DN 19-4] ¶¶ 27, 30, 33.)

9

whether the Operating Agreement was breached in Dr. Grogan's state action. In support of its position, DVC relies on Motorists Mutual Insurance Co. v. Thacker Memorial, Inc., 679 F. Supp. 2d 802, 807 (E.D. Ky. 2010). In that case, the Court declined to exercise jurisdiction after observing:

> MSM, the agency that sold the insurance policy at issue to the Thackers, is not a party to this action, though it is an integral part of the conflict and its interests are inextricably intertwined with the issues before the court. Resolving any portion of this conflict without MSM as a party to the action would be unfair and inefficient, cutting against the exercise of jurisdiction. . . . To decide the [insurance] issues this Court must determine questions of fact about MSM's representations . . . .

Id. However, as Principal Life correctly highlights, DVC's reliance on this case is misplaced.

The Court finds that the different circumstances of the underlying lawsuits justify a different conclusion here. As an initial matter, the Court recognizes that this case bears some similarity to Motorists Mutual, as the agency that sold the subject policy is not a party to this action and is a party to DVC's state action. However, this case is different from Motorists Mutual on essential points. First, Principal Life is not a party in the state action, and in Motorists Mutual, the state action named both the selling agent and policy provider as defendants. Second, Principal Life's federal complaint asks for a declaration regarding liability. In Motorists Mutual, however, the Court relied on the fact that the federal complaint did not seek declarations regarding liability. Third, Principal Life's claim was filed before the state actions, and in Motorists Mutual, the insurance company's claim was filed after the state actions. Id. at 807–08. The Court thus finds Motorists Mutual inapplicable to this case.

The main issue to be decided by this Court is whether the subject insurance policy is void due to any material misrepresentations made by DVC and Dr. Grogan during the application process.[4] The Court finds that in deciding this issue, it likely will not disturb the resolution of the

---

[4] The Court notes that it would only have to determine whether Dr. Grogan is "disabled" under the subject policy if it first determines that the insurance policy is not void. It also notes that there is no

10

state-court issues. After analyzing the pleadings and briefing in this case, the Court finds that it will not need to make any factual findings regarding the nature or scope of misrepresentations by the insurance company and agent, as these misrepresentations are not material to the question of whether the policy is void. Indeed, while evidence that comes to light in DVC's state action might work to shift liability for any misrepresentations DVC made in the application process, this liability-shifting will not somehow make the underlying policy valid if the Court finds it to be void. Accordingly, the Court finds that this declaratory action will settle the parties' controversy and clarify their issues. The first two factors weigh in favor of exercising jurisdiction.

**Factor 3: Procedural Fencing and Res Judicata**

"The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" Flowers, 513 F.3d at 558 (citing AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004)). The Sixth Circuit has held that it is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." Id. In this case, as an initial matter, the Court notes that both state actions were filed more than *three months* after this federal action was commenced. This is not an abstention case where the state actions were previously filed, nor is it a case where the state actions were filed mere days or weeks after the federal action. Thus, it initially seems that the third favor weighs against abstention and in favor of exercising jurisdiction. See Barber-Greene Co. v. Blaw-Knox Co., 239 F.2d 774, 778 (6th Cir. 1957)

---

indication in the record that this determination would impact Dr. Grogan's state action. In Dr. Grogan's complaint, he asserts that the Operating Agreement provides that DVC shall purchase a member's interest in the company in the event of that member's death or disability. (Compl. [DN 19-2] ¶ 11.) However, there is no additional assertion indicating that this provision depends on the insurance policy's definitions and exclusions related to the term "disabled."

(noting that cases which are filed first generally take priority over subsequently-filed suits).

The Court must address DVC's argument that Principal Life engaged in procedural fencing. "Procedural fencing exists when a party in filing a declaratory action accomplishes something that the party could not do through removal." Cas. Indem. Exch. v. High Croft Enters., Inc., 714 F. Supp. 1190, 1193 (S.D. Fla. 1989) (citing Firemen's Ins. Co. v. Riley, 322 F. Supp. 349, 352 (W.D. Ky. 1971)). According to DVC, Principal Life has accomplished "backdoor removal" in this case since it raced to file in federal court and made misrepresentations to do so. DVC highlights that when it requested an appeal of Principal Life's denial, Principal Life promised a response within thirty days. Then, Principal Life asked for an extension until August 24, 2012. Thereafter, on August 24, 2012, Principal Life both affirmed its denial and advised DVC of its decision to file a civil action. A complaint was filed that same day. DVC contends that these facts show an improper motive and favor abstention. See Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc., 2001 WL 897452, at *4 (6th Cir. July 31, 2001) (finding bad faith when declaratory plaintiffs requested an extension to respond to a settlement demand and filed suit one day before the extension's expiration).

However, the Court finds that several other facts suggest that Principal Life did not engage in procedural fencing. First, it is clear that Principal Life did not gain a tactical advantage by filing this federal action, as the same law will be applied regardless of whether this action is litigated in state or federal court. Second, there is no evidence that this federal court provides a geographically more convenient place for Principal Life than state court. Cf. Ford Motor Co. v. U.S. Dep't of Homeland Sec., 2006 WL 2457521, at *8 (E.D. Mich. Aug. 23, 2006) (noting that the geographical convenience of a certain forum may be relevant to a procedural fencing determination). Third, unlike the plaintiffs in Zide Sport Shop, Principal Life did not suggest that settlement was possible or

12

represent that the parties might negotiate. Further, Principal Life did not file suit prior to the extension's expiration. The Court finds that these facts indicate that Principal Life did not have an improper motive. Accordingly, the Court finds that if DVC's procedural fencing argument causes the third factor to weigh in favor of abstention at all, it does so only slightly.

**Factor 4: Increase of Friction and Improper Encroachment**

As to the fourth factor, the Sixth Circuit has held that courts must analyze three additional sub-factors when determining whether an exercise of jurisdiction would increase friction between the federal and state courts. These factors are:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Bituminous Cas. Corp., 373 F.3d at 814–15 (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000)). The Court considers each sub-factor in turn.

*Importance of Underlying Factual Issues to Resolution of Case.* The Court finds that the first sub-factor weighs in favor of exercising jurisdiction, as the coverage question is not dependent on the outcome of a factual inquiry made in the underlying state actions. As discussed above, the issue to be decided in this action is whether the subject insurance policy is void. In making a determination on this issue, the Court finds will not need to make any factual findings regarding the nature or scope of misrepresentations by the insurance company and agent. Any factual findings made by this Court will not conflict with those made by the state courts because there are different issues to be decided. The first sub-factor weighs against abstention and in favor of exercising

13

jurisdiction.

*State Court's Position to Evaluate Factual Issues.* The Court also finds that the second sub-factor weighs in favor of exercising jurisdiction. As to this factor, the question is whether the Kentucky courts are in a better position to evaluate the factual issues than the federal court. They are not. Again, there is little overlap, if any, between the factual issues presented in the Kentucky actions and this declaratory judgment action, and the state courts are not in a better position to address the issues presented. Importantly, the insurance company is not a party to the state court action and neither the validity of the insurance policy nor the scope of insurance coverage is before the state courts. See Scottsdale Ins. Co., 211 F.3d at 560 (noting that the second sub-factor "appears to have less force when the state law is clear and when the state court is not considering the issues" and further noting that "when an insurance company is not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend is before the state court . . . a decision by the district court on these issues would not offend principles of comity").

*Close Nexus between Issues and State Law and Policy.* With respect to the third sub-factor, the Court finds that it does weigh against exercising jurisdiction. The interpretation of insurance contracts is a "question[] of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." Bituminous, 373 F.3d at 815. Thus, there is a close nexus between the underlying legal issues and state policy and this sub-factor weighs against exercising jurisdiction. Nevertheless, this does not mean that the Court must abstain from hearing the matter. After all, "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." Flowers, 513 F.3d at 561. The Court thus finds that while the third sub-factor weighs against the exercise of jurisdiction, this does not mandate dismissal of the

case. The overall effect of the three sub-factors (and thus the overall effect of the fourth factor) supports the Court's exercise of jurisdiction.

### Factor 5: Alternative Remedy

Finally, the Court must consider the fifth factor: whether there is an alternative remedy that would be better or more effective. As is almost always the case, there are alternative remedies. For example, Kentucky provides a declaration of rights procedure. See K.R.S. § 418.040. The Court finds, however, that the facts do not suggest that a state forum would be better or more effective for this declaratory judgment action. This case deals with the rescission of a contract for insurance or a declaration that the contract is void, neither of which is a novel issue of Kentucky law. Because Kentucky law "provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court [is] a clearly inferior forum to solve the issue." Id. Further, because DVC did not join Principal Life as a party to its state suit, Principal Life would be forced to either file a new action in state court or move for leave to intervene in the existing state action if the Court would dismiss this action. Accordingly, dismissal would not provide Principal Life with a superior remedy. The fifth factor supports the Court's exercise of jurisdiction.

*Balance of Factors.* In all, the Court finds that the balance of these factors weighs against abstention. Accordingly, the Court **DENIES** DVC's motion to dismiss.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Motion to Dismiss of Defendant Doctors Vision Center I, PLLC [DN 19] is **DENIED**.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States Distr  April 15, 2013

15